### Chapin C. Foster et al v. William H. Warner.

*Trover by bona fide purchaser—Confusion of goods.*

An owner of pine lands, in contracting the pine to a shingle manufacturer, retained the title thereto until it should be fully paid for, and also reserved the right to seize the shingles manufactured from it if the manufacturer failed to perform the conditions of his contract. The manufacturer mingled these shingles with others, and with the knowledge of his vendor's agent, treated them all as his own property and sold them to *bona fide* purchasers. There was evidence tending to show that in buying the latter relied on this apparently exclusive ownership. *Held* that they could maintain trover against the owner of the pine if he seized any shingles sold to them which had not been manufactured from his own timber.

Error to Saginaw. Submitted Jan. 3. Decided Jan. 17.

Trover. Plaintiffs bring error. Reversed.

*W. S. Tennant* for appellants. One who has rights in property and silently permits another to deal with it without regard thereto, is estopped from afterwards contesting the rights acquired by third persons: *Truesdail v. Ward* 24 Mich. 134; *Peake v. Thomas* 39 Mich. 589; *Vilas v. Mason* 25 Wis. 310; *Lucas v. Hart* 5 Ia. 415; *Racine County Bank v. Lathrop* 12 Wis. 466.

*Wisner & Draper* for appellee, as to estoppel, cited *Piper v. Gilmore* 49 Me. 149.

Graves, C. J. The plaintiffs brought trover to recover damages for an alleged conversion of 160 M. shingles and under the rulings of the court the jury returned a verdict

in favor of the defendant. The plaintiffs object to several decisions of the circuit judge made during the trial. The cause of action arose in September, 1880. The plaintiffs carried on business as dealers in shingles and lumber at Big Rapids, and the defendant was engaged in milling and dealing in lumber at East Saginaw, and owned certain pine lands in the immediate vicinity of Vestaburg, in Montcalm county. At the latter place one Florence A. Farmer, as survivor of the firm of George Farmer & Son, was running a shingle mill, and on the 11th of August he entered into a written contract with the defendant for the purchase of the pine timber on said lands to be manufactured into shingles.

The contract provided that Farmer should go on the land and take all the pine that would make shingles and manufacture the same and pay Warner thirty-five cents for each thousand except culls; that Farmer should cut and manufacture all of said timber within one year and render to Warner an accurate account of all shingles manufactured at the end of each and every month, with the pay for shingles manufactured from said timber and the parties further contracted in these terms: " And it is distinctly understood that the title to said timber and shingles manufactured from same shall remain in said first party's (the defendant) hands until he has had his full pay for shingles manufactured, and should said second party fail to perform any or all of the covenants as set forth in this contract, said first party has the right to take possession of the timber left on said land, and the shingles manufactured wherever he can find them and declare said contract at an end without further notice to said second party."

At the time of this contract and prior and subsequent the manufacture by Farmer was kept up on an extensive scale, the daily quantity being from 50 to 90 M., and he was constantly shipping by the car-load to points in New York, Ohio, Indiana and elsewhere, and the quantity thus sent away ran from four to twelve car-loads a week. The manufacture was not confined to timber taken from defendant's land. A portion was obtained from other lands and

there was evidence tending to prove that at least half was so obtained, and when the shingles were bunched up they were piled under sheds to await disposal, but without discriminating those out of defendant's timber from others, and it was not possible afterwards to distinguish them, and in making sales and shipments there was no attempt to pick out or discriminate according to the source of the timber. The shingles were disposed of promiscuously without any regard whatever to the derivation of the timber from which they were manufactured. Such seems to have been not merely the ordinary course of business, but the universal one. Farmer constantly transacted as though he was owner, and all appearances favored that conclusion. Indeed there seems to have been nothing to suggest the existence of any conflicting interest.

In this state of things the plaintiffs, through their agent Sherwood, negotiated a bargain with Farmer for the purchase of a large quantity of shingles, including those here in question, and on the 15th of September the contract was put in writing, and two days later the plaintiffs paid the consideration in money, $1155, to Farmer, and the shingles were left in the shed connected with the mill. There is no ground for saying that there were any facts at the time of this transaction to affect the plaintiffs with notice of the right or interest of the defendant, and the record contains no evidence that they were not *bona fide* purchasers. The defendant was informed of this sale and claiming that Farmer was behind in his payments he proceeded to seize the shingles so sold by Farmer to the plaintiffs, and applied them to his own use. In this he must have relied on his title rights under his contract with Farmer, because there was no other ground he could occupy, and according to the terms there stipulated he could only claim under any circumstances the identical shingles which had been made out of his timber. He was bound to show that they were the product of the timber covered by the contract. His right might extend as far as his title but no further.

Whatever right he may have had against Farmer as a

consequence of his wrongful intermixture or confusion of the shingles, in case there was any, to seize and hold the required quantity out of the common mass, he had no such right as against the plaintiffs, who according to this record were innocent purchasers from Farmer; because it was by means of defendant's trust in Farmer that he was enabled to deal with them as he did and obtain their money as though he was the sole and absolute proprietor of the property. In ruling to the contrary the trial judge erred. There was evidence for the jury that the business with Farmer was conducted on the part of Warner through Eastman and McManus as his agents; that he put them in his place to watch the manner in which Farmer transacted and to protect the interests of their principal; and there was evidence further for the jury that these agents were spectators of the way in which Farmer proceeded, and knew that he assumed to be proprietor of all the shingles made and that he handled the property as an owner would and sold and shipped it in such manner as he chose; and yet that the defendant, neither in person nor by either of these agents or any one else, raised any objection or attempted in any way to make his interest or his rights known or to warn the public against being misled.

There was also evidence for the jury that the plaintiffs relied on these appearances and were led by them to purchase the shingles in question. If the facts corresponded with the indications of this evidence they furnished a full answer to the defense. The judge ruled differently.

The record is voluminous and there are thirty-seven allegations of error. But what has been said disposes of a large number, and the most material, and it is not reasonable to suppose that any which are not covered by the views expressed will arise again.

The judgment should be reversed with costs and a new trial ordered.

The other Justices concurred.